130 So.2d 213

## UNITED SECURITY LIFE INSURANCE COMPANY

### v.

### Belle R. ST. CLAIR, Admrx.

### 6 Div. 783.

Court of Appeals of Alabama.

Feb. 21, 1961.

Rehearing Denied March 14, 1961.

Hogan, Callaway & Vance, Birmingham, for appellee.

S. P. Keith, Jr., Birmingham, for appellant.

HARWOOD, Presiding Judge.

This is an appeal from a judgment in favor of Belle St. Clair, as Administratrix of the estate of Sam C. St. Clair, resulting from her action seeking damages under a hospital insurance policy issued by the appellant, the United Security Life Insurance Company.

The evidence presented below is in many aspects without material contradictions, and as to this portion of the evidence we think it tends to show that on 1 December 1954, Mr. Sam C. St. Clair took out a policy with the Home Security Life Insurance Association, a precursor of this appellant, by which the company promised to pay indemnity for loss due to hospital expenses resulting from accidental injury or sickness. In his application for the original policy Mr. St. Clair disclosed that he had suffered from an arterial condition of the right leg, and this original policy contained a waiver of liability by insured for expenses resulting from "treatment for recurrence of arterial disease of either leg." Thereafter Mr. St. Clair paid all the premiums due upon the original policy and kept the same in full effect down through April 1957. At about this time the appellant, United Security Life Insurance Company, took over the Home Security Life Insurance Association, and assumed the policies of the said Home Security Life Insurance Association, and premiums thereon were regularly paid.

Thereafter on 4 May 1957, Mrs. Sara Rodgers, an employee and agent of the appellant went to the home of Mr. and Mrs. St. Clair and took an application for a hospital expense policy to be issued in lieu of the policy in the Home Security Life Insurance Association. The only parts or questions of this application that were filled out show only that the name of the applicant and member of the family group were Sam C. St. Clair and Belle R. St. Clair, together with their address in Birmingham, Alabama. This application bears the signature of Sam C. St. Clair, though Mrs. Rodgers testified that she signed Mr. St. Clair's name to the application stating she did not have Mr. St. Clair sign it because, "I didn't have to." The application also acknowledges the payment of the first month's premium.

In this connection it might be well to interpolate that Mrs. Rodgers testified in substance that she told Mr. St. Clair that the policy to be issued by the appellant was to be in lieu of the original policy issued from the Home Security Life Insurance Association, and was to contain all the provisions and any waiver or limitation of liability contained in the original policy.

On the other hand Mrs. St. Clair testified that she was present during parts of the conversation between Mrs. Rodgers and Mr. St. Clair, but was not present during the entire conversation as she was in and out of the room. Mrs. St. Clair testified that at none of the times that she was present during the conversation was anything said by either Mrs. Rodgers or Mr. St. Clair relative to any limitation of liability provision to appear in the new policy to be issued by the appellant.

Thereafter a policy was issued by the appellant by which it promised to pay indemnity for loss resulting from accidental injury or sickness. The effective date of this policy is 1 December 1954, the same date of the original policy issued by the Home Security Life Insurance Association.

Mrs. St. Clair testified that there was no rider attached to this second policy imposing any limitation of liability resulting from any particular disease or sickness.

In the policy issued by the appellant, sickness is defined as:

" 'Sickness' as used in this policy means sickness or disease contracted and commencing after this policy has been maintained in force for not less than thirty days after its date and causing loss commencing while this policy is in force, subject to the exceptions, reductions and limitations hereinafter expressed."

Dr. James B. Shelton was called as a witness for the plaintiff in the proceedings below. Dr. Shelton's direct examination was concerned principally with the reasonableness of the hospital, surgical and medical bills incurred by Mr. St. Clair.

On cross-examination Dr. Shelton testified that he saw Mr. Sam C. St. Clair in January of 1954, and that at that time he had an arterial disease of his right leg; that in August of 1958, Mr. St. Clair was hospitalized for Burger's disease, or arterial disease of his right leg, and that he was hospitalized again in October of 1958 for this same condition.

During this last hospitalization it was necessary to amputate Mr. St. Clair's right leg.

This is all of the testimony relative to Mr. St. Clair's medical history or diseases other than Mrs. St. Clair's testimony to the effect that Mr. St. Clair's first hospitalization in August of 1958 was for the treatment of an infected callus on his foot.

The record shows that the suit on the policy issued by the appellant was originally filed in the Intermediate Civil Court of Jefferson County and the judgment was there rendered in favor of the plaintiff in the sum of $907.32; and that from this judgment the defendant, appellant here, perfected its appeal to the Circuit Court of Jefferson County, where the proceedings were de novo.

In the Circuit Court the appellant filed what it termed a plea in abatement setting up in substance that the plaintiff had failed to furnish the defendant company with proof of loss within 90 days after the time in which the defendant might be liable for damages under the policy, and in fact had never furnished proof of loss. The plaintiff filed a motion to strike said plea in abatement on the grounds, among others, that the defendant had waived its right to file such plea in that it affirmatively appeared that the defendant did not file any plea in abatement when the case was tried before the Intermediate Civil Court of Jefferson County, Alabama, but rather joined issue and said case was tried on the merits, and judgment was rendered for the plaintiff, and said judgment was appealed.

The court granted the plaintiff's motion to strike the plea in abatement and this action by the court is the basis of appellant's assignment of error No. 2.

This assignment is without merit, in that by joining issue in the Intermediate Civil Court, the appellant abandoned its right to plead any matter then existing, in abatement, and this right having once been abandoned in that court, it cannot be revived by an appeal to the Circuit Court. Noles v. Marable, 50 Ala. 366.

Furthermore, Mrs. St. Clair testified that after the first hospitalization her husband, in her presence, filled out a form for a claim for medical expenses and sent it to the United Security Life Insurance Company office, and in return Mr. St. Clair received a letter from the Claims Department of the company which stated in substance that the company refused payment because of the special agreement stipulating that no amount would be payable for any loss resulting from arterial disease of either of Mr. St. Clair's legs. This letter was received in evidence.

Where an insurer refuses to pay an insured on some grounds other than failure to furnish proof of loss, it waives the requirement of such proof. Byrd v. Aetna Life Insurance Company, 25 Ala. App. 318, 146 So. 78; Metropolitan Life Insurance Company v. Brown, 27 Ala.App.

602, 177 So. 178; Sovereign Camp, Woodmen of the World v. Deese, 236 Ala. 85, 181 So. 274. It therefore appears that the appellant could have taken nothing under its plea in abatement in any event.

Assignment of error No. 3 alleges error on the part of the court in overruling the defendant's demurrer to the count on which the case went to the jury.

Ground 23 of the demurrer asserts that it affirmatively appears that the suit was brought on two policies when actually only one policy was involved. It is this ground which counsel for appellant argues in his brief under assignment of error No. 3.

■ Counsel's argument under this assignment is without merit in that the claim as set forth in the count was based on a single policy, although the plaintiff claimed damages for two hospitalizations under this single policy. It is permissible to claim for different losses arising under the same policy. Globe & Rutgers Fire Insurance Company v. Papas, 219 Ala. 332, 122 So. 346; Sussex Fire Insurance Company v. Barton, 225 Ala. 570, 144 So. 439.

Appellant's assignment of error No. 4 reads:

"For the court erred in giving appellees a judgment and verdict for $999.00. (Tr. 15)"

The record shows that while the jury returned a verdict for $999, the court below, in its judgment on the motion for the new trial recited that it considered the verdict excessive by the sum of $241.35, and denied the motion for a new trial on the condition that the plaintiff file with the clerk below a remittitur reducing the judgment to $727.70, plus interest from 25 January 1959 of $29.95, making a total judgment of $757.65, the plaintiff being given 10 days in which to file such remittitur or said judgment would be set aside and a new trial ordered. The plaintiff below within the time required did file such remittitur.

It therefore appears that the judgment was in the sum of $727.70, plus interest of $29.95, and not $999, as alleged in the assignment of error. Only by a most liberal interpretation can assignment of error No. 4, supra, be construed as asserting that the judgment was excessive. Even so, in the trial below Mr. James Wright, a witness for the defendant-appellee, testified first that if the appellee was entitled to recover under the policy, then she was entitled to the sum of $822.70. On recall Mr. Wright testified that such sum should be $727.70, thus the amount of the verdict could not be considered excessive even under appellant's own evidence.

Furthermore, in his argument under this assignment of error, counsel's argument extends some four and one half pages, and several other points are argued entirely immaterial to this assignment, and so intertwined that we had difficulty in determining the point sought to be raised, particularly since no authorities are cited, and only propositions of law appearing in appellant's brief are referred to. Very clearly, several of these propositions of law are not applicable to assignment No. 4.

Assignment of error No. 5 asserts as error the refusal of defendant's requested charge No. 1, which charge was affirmative in nature. Under this assignment counsel first argues that there was no evidence to establish the plaintiff's case in that all of the evidence in favor of defendant was to the effect that there was a mutual mistake and that the parties intended for the waiver of arterial disease to be included in the United Security Life Insurance Company policy.

It should be noted that Mrs. St. Clair testified that during the time she was present upon the occasion of Mrs. Rodger's visit to their home in connection with getting Mr. St. Clair's application for the policy in the United Security Life Insurance Company to be issued in lieu of the policy in the Home Security Life Insurance Association, that nothing was said in reference to any

limitation upon the diseases to be covered by the new policy. Furthermore, the application for the new policy was made out entirely by Mrs. Rodgers, even to and including the signature of Mr. St. Clair. As above mentioned no answers were made to the numerous questions set forth in this application. Pursuant to this application the new policy was issued by the United Security Life Insurance Company. This was approximately one year after the United Security Life Insurance Company had had possession of the original application of Mr. St. Clair, showing that he had an arterial disease in 1954, and a limitation of coverage for this disease had been included in the policy issued by the Home Security Life Insurance Association on 1 December 1954.

It is undisputed that the new policy issued by the appellant did not have a rider on it providing for such limitation.

 Where an insurance agent does not ask questions of the insured but writes answers as though he had done so, the insurer cannot deny coverage on this basis. National Life & Accident Insurance Company v. Baker, 226 Ala. 501, 147 So. 427. When without any fault on the part of the insured through neglect of the insurer's agent, misstatements are made in the application, the insurer cannot defend on this ground. Alabama Gold Life Insurance Company v. Garner, 77 Ala. 210. Further, misrepresentation resulting solely from an act or oversight of the soliciting agent taking the application, without the knowledge of the insured, are not available to the insurer although the company issuing the insurance acts on the application as presented and without knowledge of the agent's misfeasance. Inter-Ocean Casualty Company v. Ervin, 229 Ala. 312, 156 So. 844; Jersey Insurance Company v. Roddam, 256 Ala. 634, 56 So.2d 631.

 Counsel for appellant further argues, under this assignment, that the policy issued by the appellant limited its coverage to diseases contracted and commencing after the policy had been in force for not less than 30 days from its date.

In this connection there is a paucity of evidence pertaining to Mr. St. Clair's illness. Dr. Shelton testified that in 1954, Mr. St. Clair was suffering from an arterial disease of the right leg; that in August 1958, he was hospitalized for several weeks for Burger's disease, a form of arterial disease, and that again in October and November 1958, he was hospitalized for this same condition, and that during this second hospitalization it was necessary to amputate his right leg. It probably should also be noted that Mrs. St. Clair testified that the hospitalization in August was for an infected callus on Mr. St. Clair's foot. This was all the evidence as to Mr. St. Clair's illness. There is no evidence that the arterial disease from which Mr. St. Clair was suffering in 1954 was the same and continuing arterial disease for which he was hospitalized in 1958. We cannot take judicial notice of such fact, under the policy sued on and which contained no waiver as to coverage for this disease. The two periods of hospitalization in 1958 were far beyond the 30 day limitation appearing in the policy. This assignment is therefore without merit in ·this aspect of the argument.

Assignment No. 12 is to the effect that the court erred in overruling the appellant's motion for a new trial. The ground of the motion brought forth under this assignment relates to the sufficiency of the evidence. Appellant also makes reference under this assignment to the alleged error resulting in action of the court in overruling appellant's motion to exclude the evidence.

What we have said above we think sufficiently answers the appellant's contentions in this regard, and in our opinion this assignment is without merit.

 Assignment of error No. 13 asserts that the court erred in overruling appellant's objection to question propounded to Mrs. St. Clair as to the various bills she had

received for Mr. St. Clair's hospitalization between August 27 and September 26, 1958. Appellant's counsel argues that this is not a proper way to prove the reasonableness of the medical bills. This assertion of course is correct. However, there was ample evidence later introduced through Dr. Shelton tending to show the reasonableness of such charges. Clearly the appellee could not show the reasonableness of a charge without first showing the amount thereof. No error resulted in this instance.

Assignment of error No. 19 relates to the action of the court in overruling an objection to a question propounded to Judge William R. Vance, Judge of the Jefferson County Civil Court, as to whether or not at the trial before Judge Vance the policy issued by the Home Security Life Insurance Association, and which had been produced by the said company on that occasion, was introduced in evidence.

In the course of his argument under this assignment, counsel for appellant states, "The testimony of Judge Vance did not contradict any testimony given." We are in accord with this statement. Without intimating that any error attaches to any part of Judge Vance's testimony, we observe that his entire testimony related to uncontradicted matters, and the appellant could not in any event probably have been injured in any of his substantial rights by any of the testimony of Judge Vance. Sup.Ct. Rule 45, Code 1940, Tit. 7 Appendix.

Assignment of error No. 30 asserts as error the action of the court in overruling appellant's objection to a question propounded to appellee's witness Dr. Shelton seeking testimony as to whether or not the charge of Dr. Meyer of $250, for amputating Mr. St. Clair's leg was a reasonable charge.

Prior to this question, Dr. Shelton had testified that he was familiar with the charges made by surgeons in "this locality" for performing operations in general and for performing operations such as the amputation of a leg.

In view of this testimony, clearly Dr. Shelton was qualified to testify as to the reasonableness of Dr. Meyer's bill.

Appellant's assignment of error No. 31 asserts that "the court erred in overruling appellant's motion to exclude the testimony of Dr. J. B. Shelton (Tr. 87) to which action of the court the appellant duly and legally reserved an exception." Under this assignment, counsel devotes his entire argument to the proposition that the court erred in overruling its objection to the question propounded to Dr. Shelton as to whether or not Mr. St. Clair had suffered "a lot of pain there in the hospital on that second hospitalization."

The record shows that this question was withdrawn by appellee's counsel and he then qualified Dr. Shelton as to his observation of people in pain and then the question was rephrased as to whether or not Mr. St. Clair, according to Dr. Shelton's observation, and his recollection of Mr. St. Clair, had suffered pain.

Dr. Shelton was perfectly competent to testify as to whether or not Mr. St. Clair appeared to suffer pain, and no error resulted from the ruling in this instance.

It further appears that later in Dr. Shelton's testimony as to what percentage of the injections had been given Mr. St. Clair were for pain, he was then asked the question, "And he did have a lot of pain?" Answer: "Yes he did." Counsel for appellant objected to the question after it had been answered and moved that it be excluded.

The objection coming after the question had been answered came too late, and no error can be cast on the court in its ruling on the objection and motion to exclude. Furthermore, we would be unwilling to cast reversal on the lower court in this instance in that the evidence had made abundantly clear that Mr. St. Clair

had been hospitalized for some time for the arterial disease of his leg, and that the disease had necessitated the amputation of the leg. Surely the jury, by common sense and by common knowledge, must have known that Mr. St. Clair had suffered pain during this experience.

Appellant's assignments of error numbers 6, 7, 8, 9, 10, 14, 16, 17, 18, 20, 21, 22, 23, 24, 25, 26, 27, 28, and 29, are deemed to be insufficiently argued to invite our review. We will observe, however, that what we have said above we believe would demonstrate the lack of merit asserted in these assignments.

Affirmed.